987 A.2d 618 (2010)
411 N.J. Super. 492
STATE of New Jersey, Plaintiff-Respondent,
v.
David RIVERA a/k/a David J. Rivera, Defendant-Appellant.
No. A-1724-08T4
Superior Court of New Jersey, Appellate Division.
Submitted December 1, 2009.
Decided January 28, 2010.
*619 Sills, Cummis & Gross, P.C., Newark, for appellant (Richard J. Sapinski, of counsel and on the brief).
Camelia M. Valdes, Passaic County Prosecutor, for respondent (Christopher W. Hsieh, Special Deputy Attorney General, Acting Senior Assistant Prosecutor, of counsel and on the brief).
Before Judges CARCHMAN, LIHOTZ and ASHRAFI.
The opinion of the court was delivered by
LIHOTZ, J.A.D.
On February 6, 2008, defendant, David Rivera, was arrested for driving while intoxicated (DWI), N.J.S.A. 39:4-50. Defendant had submitted to a breath test, which was administered using the Alcotest 7110 MK III-C system with Firmware Version 3.11 software (Alcotest). The Supreme Court has concluded the Alcotest is "generally scientifically reliable" and, with the implementation of specified modifications, a properly performed test provides blood alcohol concentration (BAC) readings admissible to support a per se violation of N.J.S.A. 39:4-50. State v. Chun, 194 N.J. 54, 943 A.2d 114, cert. denied, ___ U.S. ___, 129 S.Ct. 158, 172 L.Ed.2d 41 (2008); see also State v. Mustaro, 411 N.J.Super. 91, 96-97, 984 A.2d 450 (App.Div.2009).
The Alcotest is an embedded system, which utilizes two separate methods of measurement on each provided breath sample: electric chemical oxidation sensing (EC) and infrared sensing (IR). Chun, supra, 194 N.J. at 78, 943 A.2d 114. A test subject provides two breath samples, resulting in four separate BAC measurements. Ibid. The IR and EC readings are reported on a printed Alcohol Influence Report (AIR). Id. at 79, 943 A.2d 114.
After defendant's first attempted breath sample was rejected for insufficient breath volume, the next test recorded an EC of.109 and an IR of .107. A third test recorded an EC of .117 and an IR of .114. Following the municipal court's denial of his motion to exclude the Alcotest results as invalid, defendant entered a conditional guilty plea. The municipal court sentenced defendant, a first-time offender, for a per se violation, suspended his driving privileges for seven months, required him to spend twelve hours at the Intoxicated Driver's Resource Center, and imposed a $300 fine, $33 in court costs, a $50 Victims of Crime Compensation Board assessment, a $200 DWI surcharge, and a $75 Safe Neighborhood Fund penalty. The municipal court judge stayed execution of that sentence pending appeal. After de novo review, the Law Division denied defendant's motion to suppress the Alcotest results and again convicted defendant of DWI, imposing the same sentence, which was stayed pending our review.
In his appeal defendant relies upon an interpretation of Chun, asserting:
POINT I
THE LOWER COURT'S ALLOWANCE OF A FOUR DECIMAL PLACE AVERAGING METHODOLOGY IN COMPLETING WORKSHEET A IN RIVERA'S CASE IS CONTRARY TO THE REMEDIAL PURPOSES OF WORKSHEET A AS SET FORTH IN STATE V. CHUN.

POINT II
THE RULE OF LENITY SUPPORTS RIVERA'S METHOD OF CALCULATING WORKSHEET A AND IS NOT LIMITED TO STATUTORY CONSTRUCTION.
Following our consideration of the arguments presented on appeal and our examination *620 of the record in light of applicable legal standards, we affirm the order denying defendant's motion to suppress the Alcotest results. Consequently, we do not interfere with defendant's conviction and the sentence imposed.
Prior to review of defendant's challenge on appeal, it is instructive to recite the basic operation of the Alcotest as discussed in Chun.
The Alcotest's process for ascertaining BAC is not "operator-dependent"; that is, it is fully computerized. Chun, supra, 194 N.J. at 79, 943 A.2d 114. This automation is a benefit associated with the Alcotest, "which is intended to reduce the role of the operator and thereby minimize the potential for human error" to impact the results. State v. Ugrovics, 410 N.J.Super. 482, 490, 982 A.2d 1211 (App.Div.2009).
The Alcotest is programmed to prohibit operation until it performs controlled test samples to assure accurate operation. Chun, supra, 194 N.J. at 80, 943 A.2d 114. Thus, prior to testing a subject, the Alcotest runs a controlled vapor sample with a known alcohol concentration of .10. Ibid. In order for the machine to be used, the Firmware program requires control test results be within specified parameters, not less than .095 nor more than .105. Ibid. Additionally, for a subject's breath samples to be valid, the subject must provide a continuous sample of sufficient duration, volume and flow rate, and each sample must fall within the range of certain minimum fixed criteria. If not met, the machine will generate an error message. Id. at 82, 943 A.2d 114.
The Alcotest calculates the BAC using only valid samples. "In the event that the administration of the test resulted in errors because of, for example, insufficient breath volume or duration, the AIR will report those errors and will not attempt to calculate the BAC from an inadequate sample." Ibid. The AIR reports the valid results of each EC and IR reading to three decimal places. Id. at 83, 943 A.2d 114. The measurements for the first breath test must be within the "accepted range of tolerance with the measurement for the second breath test[.]"[1]Id. at 81, 943 A.2d 114. The BAC used is the lowest of the four readings within the acceptable tolerances, truncated to two decimal places. Id. at 83, 943 A.2d 114. "The effect of truncating, as opposed to rounding, is to underreport the concentration, to the benefit of the arrestee." Ibid.
Chun ordered the programmed Alcotest range of tolerance be revised such that the benchmark for a true reading of BAC must be set at plus or minus five percent or, in absolute terms, "0.005 percent BAC from the mean or plus or minus five percent of the mean, whichever is greater[.]" Id. at 116, 943 A.2d 114. This requires two calculations when setting the upper and lower limits. Id. at 116, 119, 943 A.2d 114. Because the Firmware version 3.11 at issue utilized a plus/minus ten percent range of tolerance, manual calculations on a worksheet developed by the Court (Worksheet A) were required to assure accuracy. Id. at 118, 943 A.2d 114.
Defendant's assertions on appeal challenge the State's methodology when calculating the relative and absolute upper tolerance limits to discern whether the Alcotest readings obtained were valid. He argues for an alternative methodology that will place his EC reading of .117 outside the upper range of tolerance and nullify the overall calculation of his BAC.
*621 It is agreed that the actual mean of defendant's four Alcotest readings, reached by dividing the sum of the four readings by four, is .11175. In performing the calculations set forth on Worksheet A, the State truncated that mean to .1117 and proceeded with the remaining calculations, ultimately resulting in a BAC of .10, a reading that subjected defendant to the increased penalties provided in N.J.S.A. 39:4-50(a)(1).
Before the Law Division, defendant argued the mean must be truncated to three decimal places, or .111. In support of this position, defendant relied upon expert testimony, which noted truncating the mean to .111 lowers the upper limit of tolerance. Consequently, defendant's overall Alcotest results would be invalid because the EC reading of .117 falls outside the recalculated upper range; that is, .111 × 1.05 =.11655. Defendant again presents this argument on appeal to this court. Although unable to point to any specific language in Chun to support his proposed methodology, defendant argues reduction to three decimal places is consistent with Chun's adoption of truncating the lowest score to benefit defendants charged with per se violations of the DWI statute.
As further support for adoption of his method of calculation, defendant suggests a court, when faced with "two reasonable constructions" that affect the degree of criminal punishment of a "per se violation," must use the rule of lenity. Therefore, defendant's proposed method of truncation must prevail.
Where a municipal court judgment has been appealed to Superior Court, we ordinarily review the Law Division judgment under a sufficiency of the evidence standard. In conducting the review required under Rule 3:23-8(a), "the Law Division's judgment must be supported by sufficient credible evidence in the record." Ugrovics, supra, 410 N.J.Super. at 487, 982 A.2d 1211 (citing State v. Segars, 172 N.J. 481, 488, 799 A.2d 541 (2002)); see also State v. Kashi, 180 N.J. 45, 48, 848 A.2d 744 (2004). However, because the Law Division's judgment rested entirely on its interpretation of the Court's opinion in Chun, our scope of review is de novo, without affording any special deference to the trial court's interpretation of the law and the legal consequences that flow from established facts. Manalapan Realty, L.P. v. Manalapan Tp. Comm., 140 N.J. 366, 378, 658 A.2d 1230 (1995).
Defendant maintains truncating the mean to three decimal places is consistent with the Court's express remedial purpose in ordering the use of Worksheet A "to remedy the State's intentional reprogramming of the original [Alcotest] device ... to try to capitalize on a doubling of the accepted tolerance [range] in the AIR result... [to] reduc[e] the number of invalid results[,]" particularly at the lower result ranges. We are not persuaded by this contention and determine it misreads the Court's pronouncements regarding truncation of certain calculations.
In a historical discussion of the acceptance of a range of tolerance for the Alcotest, the Chun Court noted an inadvertent miscalculation articulated in State v. Foley, 370 N.J.Super. 341, 851 A.2d 123 (Law Div.2003). Rather than a ten percent range between the highest and lowest Alcotest readings, Foley mistakenly authorized readings within a tolerance range of ten percent above and ten percent below the mean. Chun, supra, 194 N.J. at 111-12, 943 A.2d 114. Firmware version 3.11 incorporated this impermissibly wider tolerance range, which the Court found unsustainable. Id. at 116, 943 A.2d 114. As we noted above, the Court confirmed the permissible range as "0.005 percent BAC from the arithmetic mean or plus or minus *622 five percent of the mean, whichever is greater." Ibid.
Although the Court suggested the State took advantage of the error set forth in Foley, correction of this error was unrelated to the truncation of the lowest individual Alcotest reading when reporting an arrestee's BAC. Id. at 113, 943 A.2d 114. The remedy employed by the Court was to reprogram the Firmware and, in the interim, order all BACs from Alcotest readings to be hand calculated using Worksheet A. Id. at 116-20, 943 A.2d 114.
We also reject as gross overstatement defendant's broad inference that truncation of all interim calculations, when computing a BAC, properly reflects the Court's policy of leniency towards defendants who face stiff penalties, as the result of a per se violation. See id. at 83, 943 A.2d 114. This conclusion, drawn from the directed truncation of the final BAC result, is unsupportable. The Supreme Court did not express preference for truncating the various interim calculations on Worksheet A. Truncation was limited to "the lowest of the four acceptable readings" when reporting the final BAC. Ibid. Following the plain language of the opinion, the Court simply stated the mean was to be ascertained by dividing the sum of the four breath readings by four. This direction contains no possible ambiguity or confusion.
Here, the State truncated the five digit arithmetic mean (.11175) to four decimal places.[2] Defendant suggests the result be truncated to three decimal places because the Court's illustrations used a three decimal place mean. In Chun, Justice Hoens posits two BAC calculations illustrating readings falling within and outside a set tolerance range. In these examples, when calculating the mean of the four Alcotest readings, the sum is divisible by four. Id. at 119-20, 943 A.2d 114. Thus, the mathematical result is reported to three decimal places without the need for rounding or truncation. Chun neither authorizes nor supports a methodology requiring the mean not to exceed three decimal places or the truncation of an arithmetic mean to three decimal places.
When a limit on a numeric calculation is required, the Court included express instructions in that regard. For example, in the two illustrations to determine the validity of the readings as within the tolerance limits, id. at 119-20, 943 A.2d 114, the relative and absolute tolerance limits are carried to four decimal places. Even though the actual mathematical result of the examples is to four decimal places, Worksheet A includes a direction requiring this result. Worksheet A specifically states the upper tolerance limit is to be calculated by multiplying the mean by 1.05 or adding .005 BAC and selecting the greater result calculated "to four digits after [the] decimal point." Similarly, the lower tolerance limit is computed by multiplying the mean by .95 or subtracting .005 BAC and selecting the lower result taken "to four digits after [the] decimal point."
No similar instruction limiting the mean to three decimal places is found. There is no evidence supporting a further need to truncate the mean or other interim calculations to achieve an accurate final BAC. Moreover, the unnecessary truncation of the arithmetic mean to three decimal places artificially narrows the tolerance range below that accepted by the Court. The concomitant result would falsely increase the number of invalid Alcotest results and thus preclude justifiable prosecutions for per se violations of N.J.S.A. 39:4-50.
*623 We also reject defendant's argument maintaining the rule of lenity applies to these facts. In criminal cases, the rule applies to the judicial construction of penal statutes. See, e.g., State v. Froland, 193 N.J. 186, 194, 936 A.2d 947 (2007) (noting that interpretation of a statute is restricted by the rule of lenity); State v. Brannon, 178 N.J. 500, 505, 842 A.2d 148 (2004) (stating that the rule "requires courts to construe ambiguities in criminal statutes in favor of the defendant"). The rule has no application in this matter, where we glean the intention of the Court from the Chun opinion and its attached Worksheet A.
For these reasons, we conclude the State's manual calculations of the tolerance ranges set forth on Worksheet A correctly followed the requirements articulated in Chun. Consequently, the AIR report was properly determined admissible evidence of defendant's BAC of .10 in support of his conviction of a per se violation of the statute. We, therefore, affirm defendant's judgment of conviction entered by the Law Division.
Affirmed.
NOTES
[1] "Tolerance is the range of any set of measurements that is accepted as being representative of a true reading." Chun, supra, 194 N.J. at 110, 943 A.2d 114.
[2] Our conclusion suggests this too is not authorized by Chun. However, the limited truncation had no impact on the calculation of the upper range taken to four decimal places.