NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-5103-13T3

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

WILLIAM BURKERT,

    Defendant-Appellant.

_____

APPROVED FOR PUBLICATION

March 18, 2016

APPELLATE DIVISION

Submitted January 11, 2016 - Decided March 18, 2016

Before Judges Lihotz, Nugent and Higbee.

On appeal from Superior Court of New Jersey, Law Division, Union County, Municipal Appeal No. 6070.

Caruso Smith Picini, P.C., attorneys for appellant (Timothy R. Smith, of counsel; Steven J. Kaflowitz, on the brief).

Grace H. Park, Acting Union County Prosecutor, attorney for respondent (Meredith L. Balo, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

J. Gregory Crane and Eugene Volokh (Scott & Cyan Banister First Amendment Clinic, UCLA School of Law) of the California bar, admitted pro hac vice, attorneys for amicus curiae Pennsylvania Center for the First Amendment (Mr. Crane and Mr. Volokh, on the brief).

The opinion of the court was delivered by

LIHOTZ, P.J.A.D.

Following a trial de novo before the Law Division, defendant William Burkert, a former Union County corrections officer, appeals from a judgment of conviction on two counts of harassment, a petty disorderly offense, N.J.S.A. 2C:33-4(c). Defendant's conviction was based upon his creation of two "flyers" that contained the wedding photo of a fellow Union County corrections officer (the Sergeant), which was altered to include vulgar handwritten comments in speech bubbles. On appeal, defendant argues his conviction cannot stand. He asserts his statements during the internal affairs investigation were inadmissible because they were coerced and the flyers represented speech protected by the First Amendment, precluding criminal prosecution.

Defendant's First Amendment argument is supported by amicus Professor Eugene Volokh, on behalf of the UCLA School of Law Scott & Cyan Banister First Amendment Clinic. Prosecution of the harassment complaints was undertaken by the Sergeant's private counsel, not the municipal prosecutor. See R. 7:8-7(b). For ease in presentation, we refer to the prosecuting party as the State, which urges the evidence was sufficient to uphold defendant's conviction beyond a reasonable doubt.

We have reviewed the arguments of the parties, in light of the record and applicable law. We reverse defendant's

conviction because the evidence failed to prove he engaged in harassing conduct directed to the Sergeant as required by N.J.S.A. 2C:33-4(c). Rather, the commentary defendant added to the Sergeant's wedding photograph was constitutionally protected speech.

These facts were relied upon by the Law Division, taken from the three-day Elizabeth Municipal Court trial regarding three harassment complaints filed by the Sergeant. In addition to the testimony of the Sergeant, the State's witnesses included the internal affairs officer and another corrections officer who found flyers. The State also submitted various documentary evidence. Defendant testified on his own behalf.

The Sergeant and defendant had been co-workers for twenty years. Throughout that time, "tension" and "animosity" developed between the two, in part because each was a member of a different union that represented corrections officers.

On January 8, 2011, when he arrived at work, the Sergeant found a flyer in the parking garage containing his wedding photo on which "pornographic things" were written. The Sergeant testified he was "upset, angry" and "very offended and humiliated." He recognized the handwriting on the photo as defendant's. As the Sergeant proceeded to the gun locker, he saw defendant and defendant's brother, a fellow corrections

officer, blocking the doorway. Later during the shift, defendant called the Sergeant regarding a work related issue and mentioned the Sergeant's wife had "called defendant fat." When asked by the Sergeant, defendant denied any knowledge of the flyer found in the garage.

On January 9, 2011, the Sergeant was given a second flyer by a co-worker, which was found in the locker room vestibule area. Although the photograph was identical to the first, the added message was different, and the Sergeant recognized it too as being written by defendant.[1] On January 11, 2011, Lieutenant Patricia Mauko found two lockers overturned and the offensive photos strewn on the floor. The Sergeant was not at work that day but was involved in union business, during which a superior officer handed the Sergeant a copy of the second flyer stating, "this came out the other night." The State did not establish defendant was working that date.

The Sergeant testified he became distraught, embarrassed, and feared for his safety because he believed his authority with inmates was undermined. He left work and never returned. He filed for worker's compensation, asserting a work-related

---

[1] Testimony from another corrections officer, who found copies of the flyer in the locker room on January 11, 2011, was presented. She stated on the date of that incident, the Sergeant was not working and she could not recall whether defendant was working.

psychiatric injury, and thereafter retired. In addition to the criminal complaints, the Sergeant filed a civil action against defendant.

Union County was informed of the flyers on January 12, 2011. An internal affairs investigation of the Sergeant's complaint was conducted by Sergeant Stephen Pilot from the County Corrections Department. Sergeant Pilot questioned defendant, explaining "he must give a statement or he would jeopardize his employment" and be subject to departmental discipline. In his written statement, defendant admitted to printing the Sergeant's wedding photograph, which was posted on NJ.com's Union County forum, and to adding the captions.[2] Defendant denied making any other copies, circulating the flyers, or asking anyone else to do so. Defendant objected to the admissibility of his written statement given to Sergeant Pilot. The judge never formally ruled on this objection.

Defendant testified he thought the Sergeant and he were friends and related past favors he had done for him. He then explained how over the years he noticed derogatory posts repeatedly appearing on an NJ.com forum, which increasingly

---

[2] Defendant's statement was introduced as S-3 in evidence during the municipal court trial; however, the document is not in the record on appeal. Further, advisory notices given to defendant prior to Sergeant Pilot's interview, marked as J-4 and J-5 in evidence, are not in the record.

became "personal" regarding him, his brothers, and other family members. Defendant checked the screenname attached to these posts, and found the Sergeant's wedding picture, which was also posted on the forum. Defendant became angry, copied the wedding picture at home, added the captions, and hung them in his office "in the union house."

When the Sergeant asked him about the flyers on January 8, 2011, defendant said "[n]o, that wasn't me." Examining S-1 in evidence, defendant agreed he wrote certain derogatory comments on the picture, but also identified other comments he did not write, which were apparently added by others. He denied making copies of the altered photograph or distributing them in the garage or locker area.

On cross-examination, defendant also denied blocking the Sergeant's entrance on January 8, and suggested the photographs may have been removed from his desk; however, he did not know when or by whom. He also implied the Sergeant could have distributed the copies as he was the only person alleged to have seen the flyers in the parking garage.

At the close of evidence, the judge concluded the direct and circumstantial evidence supported a finding defendant made copies of the flyers and distributed them in the garage and the locker room as "payback" for the derogatory internet postings.

Defendant was found guilty of harassment based on the incidents occurring on January 8 and 11.[3] Fines and assessments were imposed.

In the trial de novo before the Law Division, defendant argued no evidence proved beyond a reasonable doubt defendant distributed the flyers or intended to harass the Sergeant. Further, he maintained, as a matter of law, the written comments he placed on the photograph were protected speech and could not constitute criminal harassment because they were not specifically directed to the Sergeant.

The Law Division judge issued a written opinion finding the evidence sufficiently supported defendant's conviction of harassment under N.J.S.A. 2C:33-4(c). He imposed the same fines, costs, and assessments as the municipal court. Defendant appeals from the June 20, 2014 order finding him guilty.

On appeal, defendant argues:

POINT I

THE COURT SHOULD HAVE ENTERED A JUDGMENT OF ACQUITTAL AT THE END OF THE STATE'S CASE; ALTERNATIVELY, THE COURT SHOULD HAVE FOUND DEFENDANT NOT GUILTY AT THE END OF THE ENTIRE CASE AS THE STATE FAILED TO PROVE THAT DEFENDANT COMMITTED THE ACTS IN QUESTION WITH AN INTENT TO HARASS.

---

[3] The municipal court disposition sheet recites the complaint regarding the January 9, 2011 incident was "merged to the other complaint."

A.  Defendant was entitled to a judgment of acquittal at the end of the State's case.

B.  The court's _Garrity_[4] ruling was erroneous for several reasons, including because the court shifted the burden of proof on the admissibility of defendant's statement to defendant.

C.  The court's ruling admitting the complainant's testimony that he recognized defendant's handwriting was erroneous.

D.  The State did not prove an intent to harass.

POINT II

THE FIRST AMENDMENT PROHIBITS DEFENDANT'S CONVICTION FOR HARASSMENT FOR HIS EXPRESSION OF HIS OPINION OF COMPLAINANT EVEN IF DEFENDANT INTENDED TO HURT COMPLAINANT'S FEELINGS.

In our review, we "consider only the action of the Law Division and not that of the municipal court." _State v. Oliveri_, 336 _N.J. Super._ 244, 251 (App. Div. 2001) (citing _State v. Joas_, 34 _N.J._ 179, 184 (1961)). "We are limited to determining whether the Law Division's de novo findings 'could reasonably have been reached on sufficient credible evidence present in the record.'" _State v. Palma_, 426 _N.J. Super._ 510, 514 (App. Div. 2012) (quoting _State v. Johnson_, 42 _N.J._ 146, 162

---

4    _Garrity v. New Jersey_, 385 _U.S._ 493, 87 _S. Ct._ 616, 17 _L. Ed._ 2d 562 (1967).

(1964)), aff'd, 219 N.J. 584 (2014). See also State v. Rivera, 411 N.J. Super. 492, 497 (App. Div. 2010) ("Where a municipal court judgment has been appealed to Superior Court, we ordinarily review the Law Division judgment under a sufficiency of the evidence standard.").

Initially, we find it unnecessary to review defendant's arguments raised in Point I, which assert statements uttered in the course of the internal affairs investigation were inadmissible. In part, our determination results because defendant's testimony consistently admitted the same facts he told Sergeant Pilot, thus obviating any dispute.[5]

We also see no reason to untangle the arguments advanced by defendant and countered by the State in Point II, directed to

---

[5] We take no position on the Law Division judge's reasoning applying the United States Supreme Court's holding in Garrity. The United States Supreme Court held statements made by public employees under the threat of discharge were coerced and, therefore, inadmissible in subsequent criminal proceedings under the Fourteenth and Fifth Amendments. Garrity, supra, 385 U.S. at 497, 87 S. Ct. at 618, 17 L. Ed. 2d at 565. ("The option to lose their means of livelihood or to pay the penalty of self-incrimination is the antithesis of free choice to speak out or to remain silent."). Nor do we suggest agreement with the apparent determination made placing the burden to prove the issued statement was coerced fell to defendant, as opposed to the State. Compare N.J.R.E. 104(c) (placing the burden on the prosecution to prove the voluntariness of a defendant's statement), with State v. Lacaillade, 266 N.J. Super. 522, 528-29 (App. Div. 1993) (seemingly placing the burden on defendant to prove the threat of termination for failure to give a statement was both subjectively held and objectively reasonable).

whether the judge erred in denying defendant's motion for entry of a judgment of acquittal. On this issue, defendant contends once Sergeant Pilot's testimony is excluded, the remaining evidence failed to prove defendant created and distributed the flyers. The State counters and urges, with or without Sergeant Pilot's testimony, the evidence defeated defendant's motion applying the standard articulated in State v. Reyes, 50 N.J. 454, 458-59 (1967) ("[V]iewing the State's evidence in its entirety, be that evidence direct or circumstantial, and giving the State the benefit of all its favorable testimony as well as all of the favorable inferences which reasonably could be drawn therefrom, a reasonable jury could find guilt of the charge beyond a reasonable doubt."). Due to our finding defendant's conduct was non-actionable protected speech, we need not consider this question.

We turn to our discussion on whether the evidence supports conduct proscribed as criminal harassment under N.J.S.A. 2C:33-4(c). For the reasons set forth below, we conclude it does not.

Defendant was convicted on two counts of harassment under N.J.S.A. 2C:33-4(c), which reads:

> [A] person commits a petty disorderly persons offense if, with purpose to harass another, he:
>
> . . . .

c. Engages in any other course of alarming conduct or of repeatedly committed acts with purpose to alarm or seriously annoy such other person.

"[C]ourts must consider the totality of the circumstances to determine whether the harassment statute has been violated." Cesare v. Cesare, 154 N.J. 394, 404 (1998). Evaluation of whether facts meet this standard "must be made on a case-by-case basis." State v. Hoffman, 149 N.J. 564, 581 (1997).

The Supreme Court has instructed "[a] violation of N.J.S.A. 2C:33-4(c) . . . requires proof of a course of conduct." J.D. v. M.D.F., 207 N.J. 458, 478 (2011). Objective proof must show such conduct is "alarming" or prove "a series of repeated acts . . . done with the purpose 'to alarm or seriously annoy' the intended victim." Ibid. "[I]n addition to a repeated act or course of conduct, 'the statute requires that the victim . . . be the target of harassing intent.'" N.T.B. v. D.D.B., 442 N.J. Super. 205, 222 (App. Div. 2015) (quoting J.D., supra, 207 N.J. at 486).

We observe the contrast in the degree between harassment proscribed by subsection (a) of the statute, directed at communications "likely to cause annoyance or alarm," N.J.S.A. 2C:33-4(a) (emphasis added), and harassment described under subsection (c) requiring repeated acts accompanied by a "purpose to alarm or seriously annoy" the intended victim, N.J.S.A.

11

2C:34-4(c) (emphasis added).  "The Legislature has made the conscious choice that the level of annoyance caused by communications directed to a person with purpose to harass [under subsection (a)] need not be as serious as that required by subsection (c)."  Hoffman, supra, 149 N.J. at 581.

The Court has also advised the harassment statute may not be applied to allow "unconstitutional vagueness and impermissible restrictions on speech," but must be limited to regulation of improper behavior.  Ibid.  This requires proof of "a purpose to harass [a victim, which] may be inferred from the evidence presented" and from common sense and experience.  Id. at 577.  "Although a purpose to harass can be inferred from a history between the parties, that finding must be supported by some evidence that the actor's conscious object was to alarm or annoy; mere awareness that someone might be alarmed or annoyed is insufficient."  N.T.B., supra, 442 N.J. Super. at 222 (quoting J.D., supra, 207 N.J. at 487).  "Similarly, '[t]he victim's subjective reaction alone will not suffice; there must be evidence of the improper purpose.'"  Ibid. (quoting J.D., supra, 207 N.J. at 487).

Defendant argues his creation of the vulgar flyers is not criminally actionable because it amounted to speech protected under the First Amendment.  Because the speech was communicated

to others and not directed to the Sergeant, defendant urges criminal prosecution unconstitutionally restricts free speech, even if defendant intended to hurt the Sergeant's feelings. The amicus brief advances a similar argument, noting only speech directed to an unwilling recipient is restricted, not speech discussing an unwilling subject to an audience that includes willing listeners.

"The harassment statute was not enacted to 'proscribe mere speech, use of language, or other forms of expression.'" E.M.B. v. R.F.B., 419 N.J. Super. 177, 182-83 (App. Div. 2011) (quoting State v. L.C., 283 N.J. Super. 441, 450 (App. Div. 1995), certif. denied, 143 N.J. 325 (1996)). A conveyed opinion, even if stated in crude language, is not harassment. L.C., supra, 283 N.J. Super. at 450. Consequently, "proscribed speech must be uttered with the specific intention of harassing the listener." Ibid. See also State v. Fin. Am. Corp., 182 N.J. Super. 33, 36-38 (App. Div. 1981).

In this case, the evidence does not support a finding that defendant's creation of the flyer found in two areas of the jail were directed to and invaded the privacy rights of the Sergeant. Also, no proof supports such acts were a direct attempt to alarm or seriously annoy the Sergeant. Rather, defendant's uncouth annotations to the Sergeant's wedding photograph that was

generally circulated amounts to a constitutionally protected expression, despite its boorish content, which bothered or embarrassed the Sergeant.

United States Supreme Court precedent repeatedly holds expressions remain protected even where the content hurts feelings, causes offense, or evokes resentment. See, e.g., Snyder v. Phelps, 562 U.S. 443, 452, 131 S. Ct. 1207, 1215, 179 L. Ed. 2d 172, 181 (2011) (quoting Connick v. Myers, 461 U.S. 138, 145, 103 S. Ct. 1684, 1689, 75 L. Ed. 2d 708, 718-19 (1983)) ("[S]peech on public issues occupies the highest rung of the hierarchy of First Amendment values, and is entitled to special protection."); Hustler Magazine, Inc. v. Falwell, 485 U.S. 46, 55-56, 108 S. Ct. 876, 881-82, 99 L. Ed. 2d 41, 51-53 (1988) (reviewing an advertisement parody caricature of a minister in an incestuous rendezvous with his mother); NAACP v. Claiborne Hardware Co., 458 U.S. 886, 910, 102 S. Ct. 3409, 3424, 73 L. Ed. 2d 1215, 1234 (1982) ("Speech does not lose its protected character, however, simply because it may embarrass others."); Hess v. Indiana, 414 U.S. 105, 107-108, 94 S. Ct. 326, 327-29, 38 L. Ed. 2d 303, 305-07 (1973) (allowing expletives during a demonstration); Org. for a Better Austin v. Keefe, 402 U.S. 415, 415-20, 91 S. Ct. 1575, 1576-78, 29 L. Ed. 2d 1, 3-6 (1971) (vacating prior injunction prohibiting the

14

distribution of leaflets alleging a local businessman was engaging in "blockbusting" by spreading rumors minorities were moving into certain neighborhoods); Cohen v. California, 403 U.S. 15, 20, 91 S. Ct. 1780, 1783-86, 29 L. Ed. 2d 284, 291 (1971) (permitting the wearing of a jacket bearing the words "Fuck the Draft"); Garrison v. Louisiana, 379 U.S. 64, 77-79, 85 S. Ct. 209, 217-18, 13 L. Ed. 2d 125, 134-35 (1964) (rejecting view defamatory speech could be punished based on motives of the speaker, even if speaker has express malice); Terminiello v. Chicago, 337 U.S. 1, 2-3, 69 S. Ct. 894, 895, 83 L. Ed. 1131, 1133-34 (1949) (reviewing criticisms of political and racial groups).

As is ably pointed out in the amicus brief, the altered photograph in question was not directed to the Sergeant. Were the Law Division's application of N.J.S.A. 2C:33-4(c) upheld, criminal harassment would curb speech ranging from a person submitting a Facebook post excoriating an ex-lover for cheating, to the creation of offensive political flyers criticizing a city council member. Eugene Volokh, One-To-One Speech vs. One-To-Many Speech, Criminal Harassment Laws, and "Cyberstalking", 107 NW U. L. Rev. 731, 732-34, 774 (2013) (distinguishing the constitutional protections applicable to "one-to-one speech" and

from those protecting "one-to-many speech"). Therefore, we conclude the Law Division's overbroad application is erroneous.

"Speech is often 'abusive' — even vulgar, derisive, and provocative — and yet it is still protected under the . . . Federal constitutional guarantees of free expression unless it is much more than that . . . . [b]ut unless speech presents a clear and present danger of some serious substantive evil, it may neither be forbidden nor penalized." People v. Dietz, 549 N.E.2d 1166, 1168 (N.Y. 1989). "It is now clear that words must do more than offend, cause indignation or anger the addressee to lose the protection of the First Amendment." Hammond v. Adkisson, 536 F.2d 237, 239 (8th Cir. 1976).

Defendant's comments were unprofessional, puerile, and inappropriate for the workplace. Our opinion does not address whether the nature of defendant's written comments, which were posted in his workplace, may subject him to discipline by his employer. However, they do not amount to criminal harassment.

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION