# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1193-22

M.D.,[1]

    Plaintiff-Respondent,

v.

N.C.,

    Defendant-Appellant.

_____

    Submitted September 25, 2024 – Decided October 2, 2024

    Before Judges Mayer and DeAlmeida.

    On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Hudson County, Docket No. FV-09-2908-22.

    N.C., appellant pro se.

    The Vigneault Law Firm, attorneys for respondent (Stephen R. Cappetta, on the brief).

PER CURIAM

---

[1] We refer to the parties by their initials in accordance with Rule 1:38-3(d)(9) and (10).

Defendant N.C. appeals from an August 2, 2022 final restraining order (FRO) entered in favor of his ex-wife, plaintiff M.D., under the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35. He also appeals from an October 18, 2022 order denying his motion for reconsideration. We affirm all orders on appeal.

We recite the facts from the one-day bench trial. Plaintiff testified at trial and presented evidence in support of her assertion defendant committed the predicate act of harassment, N.J.S.A. 2C:33-4. Defendant, who was self-represented at trial, declined to testify and proffered no witnesses at trial.

The parties were married in 2013 and had a child that same year. Three years later, they separated. Plaintiff and the child moved to California. Defendant remained in New Jersey. In 2017, the parties divorced in California.

On June 23, 2022, plaintiff filed a domestic violence complaint in New Jersey and obtained a temporary restraining order (TRO) against defendant. In her complaint, plaintiff alleged defendant harassed her by sending threatening emails. Her complaint also identified four instances of physical abuse between 2018 and 2021.

Prior to the domestic violence trial, the judge advised, "New Jersey courts would have no jurisdiction to address custody or visitation issues." The judge explained "[t]hose [issues] ha[d] to be addressed in California . . . ."

At trial, plaintiff testified regarding defendant's emails and text messages. According to plaintiff, those communications went beyond civil communications regarding the child. She testified defendant's written exchanges contained vulgar insults and threats directed at her.

Plaintiff told the judge defendant "abused and harassed [her] for over ten years." She explained she needed a restraining order "because [defendant] continued his harassment to the point of showing up to [her] home in California and emailing [her] and finding where [she] live[d]." Based on defendant's conduct, plaintiff testified she was "afraid for [her] safety."

Plaintiff also testified regarding incidents of defendant's physical abuse. In 2012, plaintiff explained a verbal argument with defendant escalated when defendant "picked [her] up and . . . slammed [her] in a chair," causing plaintiff to suffer bruises. Plaintiff also described a 2016 incident when she told defendant she "was going to leave" the marriage. During that incident, defendant choked plaintiff and threatened further harm if she left the marriage.

3

The judge then interrupted plaintiff's testimony and asked whether plaintiff's complaint included these allegations of physical abuse. Although the complaint failed to list these incidents, plaintiff's counsel argued the pleading stated defendant "abused and harassed [plaintiff] for several years."

In response, the judge stated:

> I'm concerned that the defendant is not on notice of [these incidents] and prepared to defend that. So, if the allegations are both physical and verbal and she's going to go into detail about this physical abuse that raises a concern. . . .
>
> [W]e might have to adjourn this matter so [defendant] can prepare for that.

The judge then asked if defendant was prepared to defend against plaintiff's additional allegations of physical abuse. Defendant replied, "I would like any new information to be stri[cken] from the record if it's not in the complaint rather than an adjournment to prepare for newer complaints . . . ."

Notwithstanding defendant's request, the judge allowed plaintiff's testimony regarding the 2012 and 2016 incidents. The judge explained:

> I'm going to allow the testimony of these two incidents – only these two incidents that are not listed on the complaint. I'm going to allow the plaintiff to testify about the two incidents, but I'm not making a determination as to whether I'm going to consider it at this moment. I'll . . . allow the testimony because . . . [plaintiff] is here from California, so I want to move

4

this along, but I'm not making a determination as to whether . . . it's going to be considered ultimately.

Plaintiff resumed her direct testimony. She told the judge about the constant emails and text messages sent by defendant. In those communications, defendant repeatedly threatened to appear uninvited at plaintiff's California home. During the divorce proceedings in California, plaintiff's lawyer instructed defendant to refrain from contacting plaintiff directly. [2]

Plaintiff also told the judge she relocated three times while living in California. She did so "because [defendant] continue[d] to cyberstalk [her], find [her] home, and threaten to show up and hurt [her] or people around [her]."

Plaintiff further testified defendant's messages caused her "anxiety and fear." Plaintiff was particularly concerned about certain emails indicating defendant located her residence even though plaintiff never gave him the address.

In June 2020, plaintiff testified defendant appeared, in California, "at [her] door looking through [her] windows." Plaintiff called the police, who suggested she apply for a restraining order. However, plaintiff did not do so at that time.

---

[2] At trial, plaintiff introduced 260 emails sent by defendant after he was instructed not to contact her. The emails spanned the time period from January 2018 to June 29, 2022.

A-1193-22

Instead, plaintiff applied for, and received a TRO in New Jersey. After defendant was served with the TRO, he immediately violated the order by emailing plaintiff.

Plaintiff concluded her direct testimony stating she was "fearful" of defendant. She also believed defendant would not stop his "relentless" communications.

The judge then allowed defendant an opportunity to cross-examine plaintiff. Rather than cross-examine plaintiff, defendant raised custody and parenting time issues notwithstanding the judge's earlier instruction that such issues must be adjudicated in California.

After a brief trial recess, the judge ruled regarding the admission of plaintiff's newly asserted allegations of physical abuse. The judge stated:

> So, the complaint will be orally amended. . . .
>
> [S]ince I'm allowing . . . the plaintiff to orally amend the complaint to add allegations that are not in the complaint[,] I will afford [the defendant] the option of granting [] a continuance . . . if you feel like you need time to prepare to defend yourself against those two allegations.
>
> You also have the right to continue today. You have the right to do that. If we do adjourn this matter and continue it another day[,] then I will allow the plaintiff to appear via Zoom. So, I will leave that up to you.

6

Defendant renewed his objection to allowing plaintiff to amend her domestic violence complaint. The judge reiterated that defendant could proceed with the trial the same day or, alternatively, adjourn the trial to another date to respond to plaintiff's newly asserted abuse allegations.

When defendant repeated his objection, the judge stated:

> I'm . . . going to allow you the flexibility of continuing today because you've already heard the testimony about an hour and a half ago, or I'll give you a new date . . . . But it will continue from this point forward. We're not going to do the whole matter over again. Let's say you said you wanted a new date, you needed time to prepare. When you come back[,] we're just going to resume exactly where we were. Do you understand?

Defendant confirmed he understood and stated he would continue with the trial that same day. Defendant then resumed cross-examining plaintiff and asked if she had evidence or witnesses to support her newly raised allegations of physical abuse. Plaintiff responded only she and defendant were present during the described incidents.

After plaintiff completed her testimony, the judge explained defendant had the "option to testify o[n] his own behalf." The judge further stated that if defendant testified, at the conclusion of his testimony, "plaintiff's counsel ha[d] the right to cross-examine [defendant]." The judge asked if defendant wanted to testify.

7

Before responding, defendant asked the judge for clarification regarding his own testimony. The judge explained, "[Y]ou're pro se, so . . . there's no one asking you questions. You're just going to give a narrative."

After the judge gave this clarification, the judge and defendant had the following exchange:

> THE COURT: So, sir, are you going to testify? . . .
>
> [DEFENDANT]: No, Your honor.
>
> THE COURT: Are you going to testify?
>
> [DEFENDANT]: I won't testify. I won't testify, Your Honor.
>
> THE COURT: You're not going to testify on your own behalf?
>
> [DEFENDANT]: I'm not going to testify.
>
> THE COURT: If you don't testify [o]n your own behalf[,] I'm going to render a decision then.
>
> [DEFENDANT]: No problem.
>
> THE COURT: You understand that?
>
> [DEFENDANT]: Yes. I thought you – is this our closing arguments? I thought we had also closing arguments?
>
> THE COURT: I'll allow you to make closing arguments, but it has to be only based on what the

plaintiff said on direct and cross-examination; do you understand that?

[DEFENDANT]: I understand.

THE COURT: Okay. So, you can give your closing argument. You go first since the plaintiff – it goes in reverse order at the end. So, you go first. Give your closing argument and it can only be based on what the plaintiff – the evidence that was adduced during the trial.

After this exchange, instead of giving a closing argument, defendant began testifying. The judge interrupted, stating, "You're . . . testifying. This is a closing argument. . . . So, you can't testify now during your closing because you decided not to testify. Do you understand?"

Defendant confirmed he understood. Defendant then advised he would forego closing argument.

In response, the judge stated:

> I will reopen your case and allow you to testify under oath. You have to testify under oath. You testify, plaintiff's counsel is going to cross-examine you. He's going to cross-examine you about a lot of stuff. He has the right to do that. I just want to make you fully aware that you have the right to testify under oath. You're deciding not to do that. You have the right to waive that option.
> You also have the right to give a closing argument. A closing argument has to be based on the evidence that was presented during the trial. You don't

9 A-1193-22

have an obligation to do that, but you have a right to do that. Do you understand that?

Defendant again declined to testify and told the judge that he no longer wanted to give a closing argument. Plaintiff's counsel then waived closing argument.

At the conclusion of the trial, the judge placed his decision on the record. The judge determined defendant committed the predicate act of harassment. He found plaintiff's testimony regarding the prior history of domestic violence credible. The judge also concluded defendant's vulgar and threatening emails and text messages, unannounced arrival at plaintiff's California home, and violation of the TRO, were done with the intent and purpose to harass plaintiff. The judge noted many of defendant's emails and text messages were not limited to issues regarding the child. Further, the judge explained defendant could, and should, have applied to the California court to resolve any child-related issues rather than harassing plaintiff with his constant emails and text messages.

After determining defendant harassed plaintiff, the judge analyzed whether plaintiff required an FRO to prevent future acts of domestic violence. Relying on plaintiff's testimony and defendant's violation of the TRO, the judge found plaintiff continued to fear defendant and required an FRO to protect her

10

from further abuse. Notably, the judge did not rely on, or even consider, plaintiff's newly asserted incidents of physical abuse in rendering his decision.

Defendant moved for reconsideration of the FRO, which the judge denied. In denying the motion, the judge stated on the record: "[Y]ou decided not to testify. So, many of the arguments that you're bringing up right now, you're bringing up for the first time because you[] decided to remain silent during the trial with regard to your testimony." The judge concluded defendant had ample opportunity to present his case at trial, but he declined to testify.

The judge also declined to consider defendant's reconsideration arguments regarding the alleged violation of his parental rights. The judge reiterated defendant's issues concerning custody and parenting time could only be addressed in California, where plaintiff and the child lived. The judge explained, "this trial was simply about whether you, under [the PDVA], harassed [] plaintiff, and were in contempt of a domestic violence order that was issued in New Jersey." The judge found defendant's arguments, "in addition to not being brought up during the trial[,] [were] irrelevant to the narrow issues that [the court] address[ed] under the [PDVA]."

On appeal, defendant argues he was deprived of the right to due process when the judge considered allegations raised by plaintiff during the FRO hearing

that were not asserted in her domestic violence complaint. He further contends the FRO was unsupported by substantial and credible evidence, and plaintiff did not require an FRO to protect her from future acts of domestic violence. Additionally, defendant claims the judge erred in denying his motion for reconsideration. We reject these arguments.

We first consider defendant's argument that he was deprived of his right to due process during the FRO hearing. We disagree.

The PDVA "ensure[s] that individuals charged with committing domestic violence offenses are treated fairly and receive the full panoply of due process rights guaranteed by our federal and State constitutions." A.M.C. v. P.B., 447 N.J. Super. 402, 421 (App. Div. 2016). A person's due process rights are violated if an FRO is granted based on allegations not contained in a domestic violence complaint. H.E.S. v. J.C.S., 175 N.J. 309, 324-25 (2003).

Here, the judge afforded defendant an opportunity to adjourn the trial to address plaintiff's allegations of physical abuse not contained in her domestic violence complaint. However, after being given the option to adjourn or continue the trial, defendant elected to proceed with the trial.

Moreover, in issuing the FRO, the judge declined to rely on plaintiff's newly asserted allegations of physical abuse. The judge granted the FRO based on plaintiff's testimony limited to the allegations in her complaint.

Additionally, having reviewed the colloquy between the judge and defendant, we are satisfied the judge scrupulously ensured defendant understood his rights, including the right to cross-examine plaintiff and testify on his own behalf. On this record, it is clear that defendant voluntarily chose to proceed with the trial.

We decline to address defendant's arguments regarding his right to "care, custody[,] and control" of his child. The FRO judge lacked jurisdiction to address such issues and so advised the parties prior to the start of the trial. Further, defendant's issues related to custody and parenting time were not relevant to whether an FRO should be granted.

We next consider whether the judge erred in granting the FRO because plaintiff failed to meet her burden under Silver v. Silver, 387 N.J. Super. 112 (App. Div. 2006). We reject defendant's argument on this point.

Our review of an FRO issued by the Family Part is limited. See D.N. v. K.M., 429 N.J. Super. 592, 596 (App. Div. 2013). See also Cesare v. Cesare, 154 N.J. 394, 411-12 (1998) (holding the appellate court's review of a trial

judge's fact-finding function is limited). A judge's findings of fact "are binding on appeal when supported by adequate, substantial, credible evidence." Cesare, 154 N.J. at 411-12. Deference is particularly warranted where, as here, "the evidence is largely testimonial and involves questions of credibility." Id. at 412 (quoting In re Return of Weapons to J.W.D., 149 N.J. 108, 117 (1997)). This is because "the trial judge 'hears the case, sees and observes the witnesses, and hears them testify,' affording it 'a better perspective than a reviewing court in evaluating the veracity of a witnesses.'" Gnall v. Gnall, 222 N.J. 414, 428 (2015) (quoting Cesare, 154 N.J. at 412). We will "not disturb the factual findings . . . of the trial judge" unless convinced they are "so manifestly unsupported by or inconsistent with the competent, relevant[,] and reasonably credible evidence as to offend the interests of justice." Allstate Ins. Co. v. Northfield Med. Ctr., P.C., 228 N.J. 596, 619 (2017) (quoting Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974)).

When deciding whether to grant an FRO under the PDVA, a judge is required to undertake a two-prong analysis. Silver, 387 N.J. Super. at 125-27. "First, the judge must determine whether the plaintiff has proven, by a preponderance of the credible evidence, that one or more of the predicate acts

set forth in N.J.S.A. 2C:25-19[(a)] has occurred." Id. at 125. (citing N.J.S.A. 2C:25-29(a)).

Under N.J.S.A. 2C:25-19, domestic violence is the infliction of one or more of the enumerated predicate acts upon a protected person. Harassment, N.J.S.A. 2C:33-4, is a predicate act under the PDVA.

The statute states, a person commits harassment "if, with purpose to harass another," the person "[m]akes or causes to be made, one or more communications . . . in offensively coarse language, or any other manner likely to cause annoyance or alarm." N.J.S.A. 2C:33-4(a). Additionally, harassment may be found where a person "[e]ngages in any other course of alarming conduct or of repeatedly committed acts with purpose to alarm or seriously annoy such other person." N.J.S.A. 2C:33-4(c).

"[I]ntegral to a determination of harassment" under subsections (a) or (c) is a finding by the trial court "that defendant acted with a purpose or intent to harass another." State v. Duncan, 376 N.J. Super. 253, 261 (App. Div. 2005) (citations omitted). Subsection (c) requires a course of conduct, rather than a single communication. J.D. v. M.D.F., 207 N.J. 458, 477-78 (2011). A course of conduct must be demonstrated by objective proof that it is "alarming or . . . a series of repeated acts . . . done with the purpose to alarm or seriously annoy the

15

intended victim." State v. Burkert, 444 N.J. Super. 591, 600 (App. Div. 2016), aff'd, 231 N.J. 257 (2017) (citation and internal quotation marks omitted). Subsection (c) also requires proof that the defendant "reasonably put that person in fear for his safety or security or . . . intolerably interfere[d] with that person's reasonable expectation of privacy." Burkert, 231 N.J. at 284-85.

The burden of proving a predicate act is a preponderance of the evidence standard. N.J.S.A. 2C:25-29(a); Cesare, 154 N.J. at 401. While a single action may constitute domestic violence, the action must be "sufficiently egregious." Cesare, 154 N.J. at 402.

Determining whether conduct constitutes harassment is a fact-sensitive inquiry. See State v. Hoffman, 149 N.J. 564, 580-81 (1997). "'A finding of a purpose to harass may be inferred from the evidence presented,' and from common sense and experience." H.E.S., 175 N.J. at 327 (quoting Hoffman, 149 N.J. at 577). Harassment may also be inferred from the parties' history. J.D., 207 N.J. at 487.

If the judge finds a predicate act under the PDVA, the second inquiry "is whether the court should enter a restraining order that provides protection for the victim." Silver, 387 N.J. Super. at 126. Although the second Silver prong "is most often perfunctory and self-evident, the guiding standard is whether a

A-1193-22

restraining order is necessary, upon an evaluation of the factors set forth in N.J.S.A. 2C:25-29[(a)](1) to -29[(a)](6), to protect the victim from an immediate danger or to prevent further abuse." Id. at 127.

In rendering an analysis under the second Silver prong, the judge should consider the following:

> (1) The previous history of domestic violence between the plaintiff and defendant, including threats, harassment and physical abuse;
>
> (2) The existence of immediate danger to person or property;
>
> (3) The financial circumstances of the plaintiff and defendant;
>
> (4) The best interests of the victim and any child;
>
> (5) In determining custody and parenting time the protection of the victim's safety; [and]
>
> (6) The existence of a verifiable order of protection from another jurisdiction.
>
> [N.J.S.A. 2C:25-29(a)(1)-(6).]

Having reviewed the record, we are satisfied there was sufficient credible evidence to support the judge's conclusion defendant committed the predicate act of harassment under the first Silver prong. Defendant engaged in a course of alarming conduct through his incessant emails and text messages. That

conduct was done to seriously annoy or alarm plaintiff. Further, defendant appeared unannounced and uninvited to plaintiff's home in California. Additionally, defendant made repeated threats in his written communications sent to plaintiff, causing plaintiff to fear for her safety and security. Defendant's communications included vulgar and vile language and threats of harm, which were sent by defendant with the intent and purpose of seriously annoying or alarming plaintiff.

Under the second Silver prong, the evidence established an FRO was required to protect plaintiff "from an immediate danger or to prevent further abuse." Silver, 387 N.J. Super. at 127. Here, the TRO ordered defendant not to contact plaintiff. Despite that instruction in the TRO, defendant immediately sent an email to plaintiff after he received the order. Additionally, plaintiff reiterated she did not want defendant to contact her, yet he still sent emails and text messages to her.

On this record, there was sufficient credible evidence supporting the judge's findings under both Silver prongs. Thus, we discern no error in the judge's granting an FRO in favor of plaintiff.

We next consider defendant's argument that the judge erred in denying his motion for reconsideration. We reject this argument.

We review a judge's decision on a motion for reconsideration for abuse of discretion. See Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021) (citing Kornbleuth v. Westover, 241 N.J. 289, 301 (2020)). An aggrieved party may seek reconsideration under Rule 4:49-2 where: (1) the court based its decision on "a palpably incorrect or irrational basis;" (2) the court either failed to consider or "appreciate the significance of probative, competent evidence[;]" or (3) the moving party is presenting "new or additional information . . . which it could not have provided on the first application." Cummings v. Bahr, 295 N.J. Super. 374, 384 (App. Div. 1996) (quoting D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990)).

Here, the judge's reasons for denying reconsideration incorporated his findings in support of the issuance of the FRO. Defendant failed to articulate any basis in law or fact for the judge to reconsider his decision. Nor did defendant present any new or additional information which could not have been provided during the domestic violence trial if defendant had elected to testify.

Having reviewed the record, we are satisfied the judge did not abuse his discretion in denying defendant's reconsideration motion. While defendant disagreed with the judge's decision to issue an FRO, defendant's dissatisfaction

19

is not a basis for granting a motion for reconsideration.  See <u>Palombi v. Palombi</u>, 414 N.J. Super. 274, 288 (App. Div. 2010).

To the extent we have not addressed any of defendant's remaining arguments, the arguments lack sufficient merit to warrant discussion in a written opinion.  <u>R.</u> 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1193-22