# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0302-24

A.L.S.,

    Plaintiff-Respondent,

v.

C.R.L.,

    Defendant-Appellant.

_____

       Argued March 26, 2025 – Decided May 1, 2025

       Before Judges Rose and Puglisi.

       On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Hunterdon County, Docket No. FV-10-0114-25.

       Scott M. Wilhelm argued the cause for appellant (Wilhelm & Roemersma, PC, attorneys; Scott M. Wilhelm, on the brief).

       Respondent has not filed a brief.

PER CURIAM

Defendant C.R.L. (Carter)[1] appeals from the August 22, 2024 final restraining order (FRO) entered against him pursuant to the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35. We reverse and remand for the entry of an order vacating the FRO.

The following facts were elicited during FRO hearing. Plaintiff A.L.S. (Abby) and Carter were in a dating relationship between February 2022 and October 2023. When the relationship ended, Abby obtained a temporary restraining order (TRO)[2] against Carter which he violated by contacting her through his mother. Although the TRO was dismissed in November 2023, Carter was charged with violating its no-contact provision. He was admitted into the Pretrial Intervention Program (PTI) in January 2024 and successfully completed a six-month period of supervision, after which the charge against him was dismissed.

Abby testified the "no contact order" in place during the PTI term was dissolved on July 17, 2024. That evening, Abby looked at Carter's social media accounts "to keep tabs on the situation." Abby explained she was concerned

---

[1] We use initials and pseudonyms to protect the parties' privacy and maintain the confidentiality of the proceedings in accordance with Rule 1:38-3(d)(10).

[2] The basis on which the TRO was entered is not in the record before us.

A-0302-24

because she was going to Europe the following week and Carter mentioned on his social media accounts that he was planning a trip to Europe.

Abby looked at Carter's Pinterest board and saw that there were "tens of boards" on his page about their relationship. She testified he also posted the same messages on his TikTok account. Abby said she found it "very unsettling" because their relationship ended a year before and she believed the postings were "obsessive behavior."

Although the postings are not included in the record before us, Abby provided the court a sampling of messages Carter posted between December 2023 and February 2024, which the court read into the record:

- "Just want to be home cuddling with my dogs and the person I love the most," along with a photograph of an individual plaintiff could not identify;

- "I'm so in love with you and I hope you know";

- "When you wish you were going out with your person tonight but you're going out by yourself," along with a photograph of an individual plaintiff could not identify;

- "Didn't spend the last two years together every single day when we should be doing the holidays together";

- "Just want to be taking care of you knowing how hard this time of year is for you";

A-0302-24

- "Seeing you almost every day and not getting a chance to talk to you or see the dogs"; and

- "October 29[] . . . was the last day I got a chance to sleep next to you and I miss it so . . . damn much, miss your snuggles."

Between May and July 2024, Carter made similar postings, including a poem, messages and photographs, all of which the court described as "not threatening. They're basically just love notes. That's what [Carter]'s saying." Abby reiterated her belief the postings were "obsessive and harassment."

On the day Abby obtained the TRO, defendant posted several messages:

- "My love for you is intense. You are the best gift God has ever given me";

- "You and the dogs are my home";

- "[I] was happy with you. You brought out a side of me [I've] never seen before";

- A reference to wanting to spend Abby's upcoming birthday with her;

- "Spots to take you" with pictures of Europe; and

- A photo of the parties together.

Responding to the court's question, Abby agreed that her "life, health and well-being [were] adversely affected by virtue of [Carter's] conduct."

4

Carter, represented by counsel, declined to cross-examine Abby or testify on his own behalf. Instead, counsel argued the postings were not communicated to Abby and she only saw them because she accessed Carter's social media accounts and viewed them of her own accord. The court permitted Abby to respond, and she reiterated her belief that Carter's behavior was obsessive, given the fact that they had broken up for almost a year and the postings persisted. She further explained that she only became aware of the postings because the parties' mutual friends brought them to her attention. After hearing further argument from defense counsel, the court rendered an oral decision.

First, the court determined it had jurisdiction under the PDVA because the parties were in a dating relationship. N.J.S.A. 2C:25-19(d). The court found Abby's testimony was "straightforward and very credible."

With regard to the predicate act of harassment, the court stated it was "bother[ed]" by Carter's posting "multiple love notes, hearts, how much he misses [Abby] and so forth, and a picture of [her] and these are going out and anybody in the public obviously who gets on this platform can see it." The court also noted Carter posted the messages while in PTI for violating the TRO, but acknowledged Abby did not know about the postings until mutual friends told her about them.

A-0302-24

The court found Carter had "engaged in a course of repeatedly committed acts," that was "harassing behavior." However, the court then stated, "[i]t doesn't have to be in my judgment . . . with the purpose to alarm or seriously annoy [Abby]. This came to her attention. She has all of these posts on her phone plus others that she hasn't testified to." Thus, the court found the first prong of Silver[3] was satisfied.

The court then found the second prong of Silver was met "because [Abby]'s been aware of this and[] . . . it's something that she shouldn't have to endure." Having found plaintiff satisfied both prongs of Silver, the court entered an FRO against Carter.

On appeal, Carter argues the court erred in finding an act of domestic violence occurred and in determining the FRO was necessary to protect Abby from future acts of domestic violence.

Ordinarily, "[i]n our review of a trial court's order entered following trial in a domestic violence matter, we grant substantial deference to the trial court's findings of fact and the legal conclusions based upon those findings." D.N. v. K.M., 429 N.J. Super. 592, 596 (App. Div. 2013). "The general rule is that findings by the trial court are binding on appeal when supported by adequate,

_____

[3] Silver v. Silver, 387 N.J. Super. 112 (App. Div. 2006).

6

substantial, credible evidence." Cesare v. Cesare, 154 N.J. 394, 411-12 (1998). However, reversal is warranted when a trial court's findings are "so wide of the mark that a mistake must have been made." N.J. Div. of Youth & Fam. Servs. v. M.M., 189 N.J. 261, 279 (2007) (quoting C.B. Snyder Realty Inc. v. BMW of N. Am. Inc., 233 N.J. Super. 65, 69 (App. Div. 1989)). Likewise, "if the court ignores applicable standards, we are compelled to reverse and remand for further proceedings." Gotlib v. Gotlib, 399 N.J. Super. 295, 309 (App. Div. 2008). However, our review of a trial court's legal conclusions is always de novo. C.C. v. J.A.H., 463 N.J. Super. 419, 428-29 (App. Div. 2020).

Under the first prong of Silver, the court must determine whether plaintiff proved, by a preponderance of the credible evidence, a defendant committed one or more of the predicate acts set forth in N.J.S.A. 2C:25-19(a). 387 N.J. Super. at 125. If the court finds a defendant committed at least one predicate act of domestic violence, then the second inquiry "is whether the court should enter a restraining order that provides protection for the victim." Id. at 126.

As to the first prong of Silver, Abby alleged Carter committed the act of harassment. Relevant here, a person is guilty of harassment if, with purpose to harass another, he "[e]ngages in any other course of alarming conduct or of repeatedly committed acts with purpose to alarm or seriously annoy such other

7

person." N.J.S.A. 2C:33-4(c). To survive constitutional challenges of vagueness or free speech, a "finding [of harassment] must be supported by some evidence that the actor's conscious object was to alarm or annoy; mere awareness that someone might be alarmed or annoyed is insufficient." State v. Burkert, 444 N.J. Super. 591, 600 (App. Div. 2016) (quoting N.T.B. v. D.D.B., 442 N.J. Super. 205, 222 (App. Div. 2015)). "[T]he victim's subjective reaction alone will not suffice; there must be evidence of the improper purpose." N.T.B., 442 N.J. Super. at 222 (quoting J.D. v. M.D.F., 207 N.J. 458, 487 (2011)).

The court found Carter committed harassment because he engaged in a course of repeatedly committed acts involving social media postings. However, nothing in the record established Carter posted the messages with the purpose to alarm or seriously annoy Abby, or that the conduct was done with the purpose to harass her, which are critical elements of criminal harassment. After viewing the messages and photographs, the court opined that Carter had not made the postings with the purpose to alarm or seriously annoy Abby, and therefore the finding Carter committed harassment was an error.

Although not raised in Carter's merits brief, we also note the court did not evaluate the factors set forth in N.J.S.A. 2C:25-29(a)(1) to (7) to determine whether an FRO was necessary "to protect the victim from an immediate danger

or to prevent further abuse." <u>Silver</u>, 387 N.J. Super at 127. On this record, we are persuaded the evidence did not support the judge's finding on the second prong of <u>Silver</u>. We therefore remand the matter to the Family Part for entry of an order dissolving the FRO.

Reversed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Hanley*

Clerk of the Appellate Division